## HUNTSMAN v. HUNTSMAN et al.

No. 3259.    Decided July 3, 1920.    On Application for Rehearing
September 20, 1920.    (192 Pac. 368.)

1. PRINCIPAL AND AGENT—POWER OF ATTORNEY HELD NOT TO AUTHORIZE A CONVEYANCE FOR NOMINAL CONSIDERATION. A power of attorney, for the maker's use and benefit, to bargain, sell, and convey the maker's land upon such terms and conditions as the holder might see fit, did not authorize the holder to convey land for a nominal consideration of two dollars; that being, in effect, a gift.

2. PRINCIPAL AND AGENT—GENERAL POWER OF ATTORNEY DOES NOT PERMIT ATTORNEY TO ACT FOR OWN BENEFIT. A power of attorney given to act in the name of and on behalf of his principal, couched in general language, in the absence of any showing of a contrary intent, must be construed as authorizing an act only in the separate individual business of the principal and for his benefit, and not as permitting the attorney to engage in transactions foreign or repugnant to that business, or as binding the principal by acts done not for his benefit, but for the private benefit of the attorney or others.

3. ADVERSE POSSESSION—PLEA OF ADVERSE POSSESSION NOT DEFECTIVE BECAUSE NOT ALLEGING BAR BY LIMITATIONS. In an action to

cancel a mortgage upon real estate and to quiet title thereto, an answer specifically denying plaintiff's ownership of the property, and alleging title in defendants by adverse possession, was not defective because not accompanied by plea that action was barred by statute of limitations.

4.    ADVERSE POSSESSION—PLEA OF POSSESSION "SINCE 1903" NOT DEFECTIVE BECAUSE NOT ALLEGING "EVER SINCE." In an action to cancel a mortgage upon realty or to quiet title thereto, a plea alleging that "since the year 1903" defendants and their predecessors in title had been in the notorious and exclusive possession, occupancy, and ownership of the property under an adverse claim of ownership and title was not defective because alleging "since the year 1903," etc., instead of "ever since," etc.

5.    ADVERSE POSSESSION—PLEA NOT DEFECTIVE THOUGH NOT ALLEGING POSSESSION WAS CONTINUOUS AND UNINTERRUPTED. In an action to cancel a mortgage on realty and to quiet title thereto, a plea alleging that defendants claimed adversely to all the world, and that their possession had been exclusive, was not defective because not alleging their possession was continuous and uninterrupted.[1]

6.    ADVERSE POSSESSION—NOT ESTABLISHED UNLESS CLAIMANTS HAD PAID TAXES AS REQUIRED BY STATUTE. Defendants' exclusive, continuous, and uninterrupted possession of property under a claim of right and adverse to all the world from 1903 until the commencement of the plaintiff's action to cancel a mortgage upon realty and to quiet title thereto would be unavailing, unless they paid all taxes levied and assessed against the property during a period of seven years within such time, as required by Comp. Laws 1917, section 6456.[2]

### On Application for Rehearing.

7.    EVIDENCE—CONSIDERATION EXPRESSED IN A DEED IS PRIMA FACIE TRUE CONSIDERATION. While the expressed consideration in a deed is not conclusive, where no attempt is made to prove another or different consideration that expressed in the deed is prima facie the true consideration.[3]

[1] *Larsen* v. *Onesite*, 21 Utah, 38, 59 Pac. 234; *Coleman* v. *Hines*, 24 Utah, 360, 67 Pac. 1122.

[2] *Funk* v. *Anderson*, 22 Utah, 238, 61 Pac. 1006; *Dignan* v. *Nelson*, 26 Utah, 186, 72 Pac. 963; *Crane* v. *Judge*, 30 Utah, 50, 83 Pac. 566; *Central Pac. Ry. Co.* v. *Tarpey*, 51 Utah, 107, 168 Pac. 554.

[3] *Miller* v. *Livingston*, 22 Utah, 174, 61 Pac. 569.

8.   PRINCIPAL AND AGENT—CONVEYANCE BY AGENT FOR TWO DOLLARS
     HELD A GIFT AND BEYOND HIS POWER.  Where a power of at-
     torney to convey land for the maker's benefit related to two
     city lots in a county seat, aggregating two and one-half acres,
     with water right therefor and a dwelling house thereon, to
     which the maker had quieted his title by suit, a conveyance by
     the attorney for a consideration of two dollars was made upon
     a nominal consideration, so that the deed was an attempted
     gift, beyond the power of the attorney.

9.   PRINCIPAL AND AGENT—BURDEN OF PROOF TO PROVE CONSIDERATION
     FOR DEED MADE UNDER POWER OF ATTORNEY.  Where deed pur-
     porting to be made under power of attorney expressed only a
     nominal consideration, while the power of attorney did not
     authorize a gift of the property or a sale for a nominal con-
     sideration, the burden of proof was on one claiming under such
     a deed to show it was in fact made for a substantial considera-
     tion.

10.  QUIETING TITLE—PLAINTIFF'S DENIAL OF DEFENDANT'S TITLE HELD
     TO RAISE ISSUE OF NO CONSIDERATION FOR DEED UNDER WHICH
     DEFENDANT CLAIMED.  In a suit to cancel a mortgage upon land
     and to quiet title thereto, it was not necessary to make a spe-
     cial issue in the pleadings as to the question of no consideration
     for a deed under which defendant claimed, as that was suffi-
     ciently presented by simply denying defendant's title, and it
     was incumbent on defendant to show a substantial considera-
     tion in support of her title.

11.  APPEAL AND ERROR—GROUND OF MOTION TO STRIKE DEED IN DE-
     FENDANT'S CHAIN OF TITLE HELD NOT TO PRESENT QUESTION OF
     CONSIDERATION THEREFOR.  In a suit to cancel a mortgage on
     land and to quiet title thereto, wherein plaintiff moved to strike
     from the evidence a deed under which defendant claimed on
     the ground that the attorney in fact who had executed such
     deed had exhausted his power by the execution of a prior deed
     to another party, and not on the ground that there was no
     consideration for the deed, and wherein the trial court granted
     the motion solely upon the untenable ground alleged, ruling
     would not be upheld on ground of want of consideration.

12.  APPEAL AND ERROR—APPELLATE COURT SHOULD NOT MODIFY OR
     AFFIRM ON REASON NOT GIVEN BY TRIAL COURT IF INJUSTICE
     WOULD RESULT.  Though Supreme Court is not bound by the
     reasons given by the trial court for its conclusions, but may
     affirm or modify judgment upon any legal ground appearing in
     the record, still it is not bound to do so, and ought not to do

so in an equitable proceeding if it might result in injustice to appellant.[4]

Appeal from District Court, Fifth District, Millard County; *D. H. Morris*, Judge.

Action by Willis Huntsman against Emma B. Huntsman and others. Judgment for plaintiff, and defendants appeal.

REMANDED with directions.

*Wm. B. Higgins*, of Fillmore, and *King, Straup, Nibley & Leatherwood*, of Salt Lake City, for appellants.

*D. D. Houtz*, of Salt Lake City, for respondent.

THURMAN, J.

This is an action to cancel a mortgage on certain real estate in Fillmore City, Millard county, and to quiet title thereto. Plaintiff and defendant Emma B. Huntsman, hereinafter called Mrs. Huntsman, each claims to be the owner in fee of the premises in question, and the other defendants claim title under a mortgage from Mrs. Huntsman. Mrs. Huntsman not only claims to be the owner by title of record, but also by adverse possession since 1903. It is not necessary to make a detailed statement of the pleadings. Such parts as may be material will be specifically referred to hereinafter in connection with the matters to which they relate.

The trial court found the issues in favor of the plaintiff. Judgment was entered, and defendants appeal.

At the trial many collateral matters were injected into the case. They failed to reflect much light on the issues to be tried. Some of them tended to confuse more than to enlighten.

The plaintiff rests his claim upon a chain of title commencing with a patent from the United States, as follows:

[4] *Realty Co.* v. *Investment Co.*, 43 Utah, 75, 134 Pac. 608.

(1)   United States to Joseph V. Robinson, mayor of Fillmore City, May 1, 1872; (2) a townsite deed from Joseph V. Robinson, mayor, to James Huntsman, June 29, 1881; (3) an administrator's deed from Gabriel Huntsman, administrator of the estate of James Huntsman, deceased, to Mary Huntsman, August 1, 1885; (4) Mary Huntsman, by her attorney in fact, to Jacob Huntsman, in fee simple, October 19, 1885; (5) Jacob Huntsman and wife to Willis Huntsman, plaintiff in this action, in fee simple, June 18, 1914. These transfers are all of record in the office of the county recorder of Millard county.

Defendant Mrs. Huntsman rests her claim, as far as record title is concerned, upon the same chain of title down to and including the title of Jacob Huntsman.   Thence on she relies on the following:   (1)   A power of attorney from Jacob Huntsman to Peter Huntsman authorizing the purchase and sale of property, both real and personal, of date May 13, 1875; (2) Jacob Huntsman, by Peter Huntsman, his attorney in fact, in consideration of two dollars, to Fanny Allen, in fee simple, November 15, 1897; (3) Fanny Allen to Peter Huntsman, in fee simple, April 19, 1898; (4) Peter Huntsman to Emma Huntsman, defendant in this action, in fee simple, July 2, 1908.   These transfers are also of record in the office of the county recorder of Millard county.

There is another transfer and also the record of a court proceeding concerning the premises in question, but they are merely collateral in this action.

The ownership of the property in litigation, as shown by the record, depends entirely upon the question as to whether or not Peter Huntsman, as attorney in fact of Jacob Huntsman, had the power to convey the property to Fanny Allen for a nominal consideration; in other words, whether or not he had the power under his letter of attorney to make an absolute gift of the property, for that is all the transaction amounts to, in substance and effect.   There is no question but that the owner of property has a right to give it away if he chooses.   He has the right to convey it for a nominal consideration, but, if he is acting under a power of attorney

for another, then he has no right to give the property away
or convey it for a mere nominal consideration, unless au-
thority so to do is conferred by the instrument under which
he assumes to act. It follows, therefore, that the power and
authority to Peter Huntsman to convey the property to
Fanny Allen without substantial consideration depends en-
tirely upon the instrument under which he executed the
conveyance. The written instrument conferring the power
is the chief cornerstone in the foundation of defendants rec-
ord title. It follows as a corollary that if the deed to Fanny
Allen was without authority, then the deed from her back
to Peter Huntsman and from Peter Huntsman to his wife
conveyed no title.

The power of attorney is of considerable length, and if
quoted in full would occupy more space than is necessary in
this opinion. We shall therefore quote only so much as is
necessary to demonstrate the purpose of the instrument, and
the extent of the power conferred:

"Know all men by these presents that I, Jacob Huntsman, of
Kern county, state of California, have made and constituted and
appointed, and by these presents do make, constitute, and appoint,
Peter Huntsman, of Fillmore City, Millard county, Utah territory,
my true and lawful attorney, for myself and in my name, place,
and stead, and for my use and benefit, and particularly to act in
my stead in so far as I am interested as an heir, of all that cer-
tain property now held in a co-operative organization whose head-
quarters are at or near Fillmore City, Millard county, Utah terri-
tory, * * * to lease, let, demise, bargain, sell, remise, release,
convey, mortgage, hypothecate lands, tenements, and hereditaments,
upon such terms and conditions and under such covenants as he
shall see fit."

The instrument also confers the usual power to perform
every act and thing requisite and necessary to be done in
and about the premises as fully, to all intents and purposes,
as the principal might or could do were he personally pres-
ent, ratifying and confirming all that said attorney, Peter
Huntsman, might lawfully do, or cause to be done, by virtue
of the instrument.

It is contended by respondent that the document which
we have quoted in part is not a general power of attorney,

but is limited by the words, "'and particularly to act in my stead in so far as I am interested as an heir,'' etc. The contention is that inasmuch as the power of attorney was executed in 1875, ten years before Jacob Huntsman acquired the property, and that he acquired it by purchase and not as an heir, therefore the property in controversy was not included in the power of attorney. It appears, however, in the record that this property was originally owned by James Huntsman, the father of Jacob; that James Huntsman died in 1871; that at the time the power of attorney was executed, in 1875, the estate of James Huntsman had not been administered, or at least the administration was not complete, for we find Gabriel Huntsman, as late as August, 1885, acting as administrator of the estate, so that whether or not it has any bearing upon the question to be determined it is deducible as a fact from the evidence that at the time the power of attorney was executed Jacob Huntsman stood in the relation of heir to this property. The power of attorney when executed in all probability had in contemplation the property in question.

There is, however, in our opinion, a fatal defect in the instrument as far as concerns the question presented here. The power to convey the property by gift, and for a nominal consideration, which in effect is the same thing, does not exist. It is not deducible from the language or manifest intent of the instrument. The language, "do make, constitute, and appoint Peter Huntsman, of Fillmore City, Millard county, Utah territory, my true and lawful attorney, for myself and in my name, place, and stead, and for my use and benefit,'' is very far from conferring power to give the property away, or convey it for a mere nominal consideration. The acceptance of only two dollars as consideration for the deed to Fanny Allen, who was a daughter of Peter Huntsman, the attorney, can by no process of reasoning be construed a benefit to Jacob Huntsman, nor as a compliance with the duty which Peter Huntsman owed to Jacob as his attorney in fact. Whether Peter Huntsman intended to derive some benefit himself or confer a benefit upon his

daughter makes no difference whatever. The taking of a benefit to himself or conferring it upon another person, and thereby depriving Jacob Huntsman thereof, was entirely beyond the scope of his authority. This appears upon the very face of the instrument itself, and when it was once recorded it was notice to all the world. Nor could Peter Huntsman derive title to the property by afterwards taking a deed from Fanny Allen. If he, under his power of attorney, could not give the property to her, she could not convey title to him, even if he had paid a substantial consideration therefor.

As to the authority of an attorney in fact, acting under a power conferred for the benefit of his principal, to make an absolute gift of the property, or convey it away without substantial consideration, we doubt if there is any conflict whatever among the authorities. Mechem, Agency (2d Ed.) section 783, states the doctrine as follows:

"A power of attorney given to an agent to act in the name and on behalf of his principal, though couched in general language, must, in the absence of anything showing a contrary intent, be construed as giving authority to act only in the separate, individual business of the principal and for his benefit. It cannot be construed as permitting the agent to engage in transactions foreign or repugnant to that business, or to bind the principal by acts done, not for his benefit and in his behalf, but for the private benefit of the agent himself, or for other persons."

In 21 R. C. L. p. 886, it is said:

"A conveyance under a power of attorney must be executed in pursuance of the power, and be within its terms; hence a power to sell does not authorize a gift of the property or a transfer of it for any purpose other than in completion of a sale."

The following cases are to the same effect: *Rogers* v. *Tompkins* (Tex. Civ. App.) 87 S. W. 379; *Dupont* v. *Wertheman,* 10 Cal. 354; *Mott* v. *Smith,* 16 Cal. 534.

In one of the headnotes to the last-mentioned case it is said:

"Where a power of attorney, relative to real estate, authorizes the agent 'to grant, bargain, and sell the same, or any part or proportion thereof, for such sum or price, and on such terms as to him may seem meet,' the agent has no power to make a conveyance in consideration of love and affection in the principal for

the grantee in the conveyance, and such conveyance is on its face a nullity."

See, also, the following cases: *Wallace* v. *Branch Bank at Mobile,* 1 Ala. 566; *Hazeltine* v. *Miller,* 44 Me. 177; *Camden S. D. & T. Co.* v. *Abbott,* 44 N. J. Law, 257; *Platt* v. *Francis,* 247 Mo. 296, 152 S. W. 332; *Gulick* v. *Grover,* 33 N. J. Law, 463, 97 Am. Dec. 728; *Lewis* v. *Lewis,* 203 Pa. 194, 52 Atl. 203; *Stainback* v. *Read & Co.,* 11 Grat. (Va.) 281, 62 Am. Dec. 648; *North River Bank* v. *Aymar,* 3 Hill (N. Y.) 262; *Adams Express Co.* v. *Trego,* 35 Md. 47; *Welke et al.* v. *Wackershauser,* 143 Iowa, 107, 120 N. W. 77.

The conclusion above reached likewise disposes of the contention of Mrs. Huntsman that the property was awarded to her by decree of court in a divorce proceeding against her husband, Peter Huntsman, in July, 1916. If Peter Huntsman was not the owner of the property the decree of court attempting to award the title to her was a nullity. Another circumstance developed by the evidence is worthy of mention. Fanny Allen was never in possession of the property at all. The deed to her was executed November 15, 1897, and without entering into possession she reconveyed it to her father, Peter Huntsman, in 1898. Aside from the want of power in Peter Huntsman to convey the property without consideration, it is quite evident the transaction was never intended as a bona fide conveyance of the property. As to the alleged conveyance from Peter Huntsman to the defendant Mrs. Huntsman in 1908, there is a sharp conflict in the evidence as to whether or not the deed was ever delivered. In view, however, of what has been said, this question can be readily disposed of, even if it be conceded that the deed from Peter Huntsman to her was formally executed and delivered. No consideration was paid therefor for the benefit of Jacob Huntsman. As we read the record, the only consideration for the deed was a past indebtedness owing by Peter Huntsman to her and the other defendants. Peter Huntsman had no more power to execute such a conveyance than he had to give the property to Fanny Allen. If we are correct in these views, Mrs. Huntsman failed in the action to

establish a record title to the property, and the title of the other defendants who claim under her has no basis upon which to stand. This leaves the record title of plaintiff, Willis Huntsman, clear and unimpeached.

But defendants contend that they are owners of the property by adverse possession since the year 1903. In their answer, among other things, defendants specifically deny that plaintiff is the owner of the property, or that the mortgage thereon is a cloud on plaintiff's title, or that plaintiff has any title or interest whatever.

The paragraph by which they alleged title by adverse possession reads as follows:

"That the defendant Emma B. Huntsman and Peter Huntsman were legally married at Fillmore, Millard county, Utah, in the year 1903, and that as husband and wife said Emma B. Huntsman and Peter Huntsman, her husband, have been the owners of lots 3 and 4, in block 68, plat A. Fillmore City survey, in Millard county, Utah, claiming and holding the same under a claim of right and title adversely to all the world; that since the year 1903 said defendants and their predecessors in title and interest have had the open, notorious, and exclusive possession, occupancy, and ownership of said property, and have paid all taxes and assessments levied upon or against said property, all under a claim of ownership and title to the same adversely to all the world."

Respondent interposes numerous objections to the sufficiency of the pleading:

(1) It is contended that the plea of adverse possession is not available unless accompanied by a plea that the action is barred by the statute of limitations. As we have shown, the defendants in their answer specifically denied plaintiff's ownership of the property. Having denied the ownership of plaintiff, they then proceed to allege title in themselves by adverse possession. We are of the opinion the pleading is not defective as far as this objection is concerned.

(2) The point is also made that the plea is defective because it says "since the year 1903," etc., instead of "ever since," etc. A fair and liberal construction of the language with the view to giving effect to the intention of the pleader will hardly justify respondent's con-

tention.   The criticism is too refined for the due administration of justice.

(3)    It is also contended by respondent that the plea is defective in not alleging that defendants' possession was continuous and uninterrupted.   It was held in *Winslow* v. *Winslow,* 52 Ind. at page 8, that such allegation was essential.   See, also, *Colvin* v. *Burnett,* 17 Wend. (N. Y.) 564. On the other hand, in *Jackson* v. *Snodgrass,* 140 Ala. 365, 37 South. 246, the court was of the opinion that where it is alleged that the possession was adverse the words "continuous" and "exclusive" need not be used.   In the case at bar it is not only alleged that defendant claimed adversely to all the world, but also that their possession had been exclusive.   It is difficult to conceive of an exclusive possession during a given period of time which is not also continuous and uninterrupted.   We do not believe that these views in essence materially conflict with the views of this court heretofore expressed in *Larsen* v. *Onesite,* 21 Utah, 38, 59 Pac. 234, and *Coleman* v. *Hines,* 24 Utah, 360, 67 Pac. 1122, cited by respondent.

Other objections are presented as to the sufficiency of the plea, but, as they are in no sense controlling, it is unnecessary to devote time and space to their consideration.   Assuming that defendants had exclusive, continuous, uninterrupted possession of the property under a claim of right and adverse to all the world from 1903 until the commencement of the action, still such possession would be of no avail in establishing their title unless they paid all taxes levied and assessed against the property during a period of seven years within the period above mentioned.   Such is the established rule of this jurisdiction.   *Funk* v. *Anderson,* 22 Utah, 238, 61 Pac. 1006; *Dignan et al.* v. *Nelson et al.,* 26 Utah, 186 72 Pac. 936; *Central Pacific Ry. Co.* v. *Tarpey,* 51 Utah, 107, 168 Pac. 554, 1 A. L. R. 1319, and cases cited; *Crane* v. *Judge,* 30 Utah, 50, 83 Pac. 566.

The record not only discloses the fact that Peter Huntsman held the power of attorney from Jacob Huntsman, his brother, concerning which much has been said in another

connection, but it also shows quite conclusively that for many years prior to the alleged conveyance to Mrs. Huntsman he occupied the property in controversy as tenant of Jacob Huntsman under an arrangement by which he was to pay the taxes levied and assessed against the property in lieu of rent. There is also evidence to the effect that Peter Huntsman paid said taxes each and every year prior to said alleged conveyance to Mrs. Huntsman, and that he also paid the taxes for some of the years after that date and prior to the commencement of this action in 1916. There is also evidence in the record that these taxes were paid for Jacob Huntsman under the arrangement to which reference has been made. The trial court found the above facts, and also found that the defendants had not paid the taxes on said property continuously during any period of seven years.

These findings are amply sustained by the evidence. In fact, it was admitted by Mrs. Huntsman herself that she paid none of the taxes at all in 1910, and only a small part of them in 1911. They were paid by Peter Huntsman, who testified that he paid them for his brother, Jacob Huntsman, in pursuance of the aforesaid arrangement.

Comp. Laws Utah 1917, section 6456, provides:

"In no case shall adverse possession be considered established under the provisions of any section of this Code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party or persons, their predecessors, and grantors have paid all taxes which have been levied and assessed upon such land according to law."

It follows, therefore, that defendants did not acquire title by adverse possession.

We have not considered in detail the alleged errors relied on by appellants. There were thirty-two errors assigned, besides fourteen subdivisions charging insufficiency of the evidence. The principal error relied on was the striking out of all the deeds and transfers constituting defendant's chain of title, commencing with the power of attorney from Jacob Huntsman. We are of the opinion that these documents were clearly inadmissible to prove title.

We find no error in the record. The judgment is affirmed, with costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.

On Application for Rehearing.

THURMAN, J.   On application for rehearing appellant contends that the court erred in holding that Peter Huntsman, the attorney in fact of Jacob Huntsman, had no authority to convey the premises in question for a nominal consideration, and that the court also erred in holding that the consideration expressed in the deed to Fanny Allen was merely nominal and that the transaction amounted only to a gift. Finally, it is contended by appellant that in any event the matter of consideration for the deed was not in issue in the pleadings nor in any manner raised in the court below.

Appellant admits that if the conveyance to Fanny Allen was only a gift it was beyond the power of the attorney in fact.

The question of burden of proof as to whether or not there was a substantial consideration for the deed to Fanny Allen is not discussed by appellant. We have no means of determining appellant's position in that regard. We recognize the rule that, while the expressed consideration in a deed is not conclusive it is well settled that where no attempt is made to prove another or different consideration the consideration expressed in the deed is prima facie the true consideration. 2 Devlin, Real Estate (3d Ed.) section 817; *Miller* v. *Livingston,* 22 Utah, 174, 61 Pac. 569; *Haywood's Heirs* v. *Moore,* 2 Humph. (Tenn.) 584; *Clements* v. *Landrum,* 26 Ga. 401.

If it be true that on the face of the record the conveyance to Fanny Allen was not made for the benefit of Jacob Huntsman, as provided in the power of attorney, then it was incumbent upon the party relying upon the deed to prove that

there was in fact a substantial consideration. In support of this proposition we refer to section 813, Devlin, supra. . We have no reasonable doubt as to the legal soundness of this proposition. In this case the ultimate question to be determined was the title to the property in question. The plaintiff introduced a chain of title extending from the United States down to the plaintiff. The chain of title on its face was flawless. The plaintiff rested his case. It was incumbent on the defendant to meet the case thus presented. She undertook to do so by introducing other deeds executed under a power of attorney. The power of attorney was explicit in requiring that the conveyance of the property must be for the benefit of the principal. The deed to Fanny Allen, executed under the power of attorney, showed on its face, in connection with other evidence, that the consideration was only nominal, and could be of no substantial benefit to the principal. In other words, it was a mere gift to the grantee, which was outside the power given to the attorney in fact. The title sought to be proven by defendant depended upon the validity of this conveyance. We feel compelled to hold, as we did in the opinion complained of, that for the reasons above stated defendant failed to establish her title or to otherwise meet the case made by plaintiff.

It is suggested, however, by appellant that the court was not justified in assuming that the consideration for the deed was merely nominal. It is true the actual value of the property was not established by the evidence. . No attempt was made so to do by either party. It does appear, however, that at the time of the attempted conveyance to Fanny Allen the property consisted of two city lots in Fillmore City, the county seat of Millard county, aggregating two and one-half acres of land, with water right therefor and a dwelling house situated thereon which had been the home of Jacob Huntsman's mother. The property was considered of sufficient importance to justify the expense of a suit instituted by Jacob Huntsman in the district court of Millard county for the purpose of quieting his title. In view of these circum-

stances, to assume that two dollars was anything more than a nominal consideration for the property would be to deliberately disregard every suggestion of common 8 knowledge and the simplest dictates of common sense.

The court feels justified in adhering to the position taken in the opinion, that the consideration for the deed was only nominal; that the deed was an attempted gift, and for that reason was beyond the power of the attorney in fact.

As contravening these propositions appellant cites the case of *Wade v. Northup*, 70 Or. 569, 140 Pac. 451. This was an Orgeon case, involving the validity of a conveyance executed by an attorney in fact under a general power of attorney. The conveyance was made by the attorney in fact upon an express consideration of ten dollars and other good and valuable considerations. The point was made by the party assailing the deed that it was merely a gift, and that the power of attorney did not include the power to make a gift. The court held the deed to be valid as a conveyance of the property, but there is a wide distinction between that case and the case at bar. In the first place, the power of attorney in that case did not expressly authorize the attorney in fact to exercise the power for the benefit of the principal. In the second place, the consideration expressed was ten dollars and other valuable considerations. In the third place, there was evidence in the record on appeal to the effect that the person executing the power of attorney was well-to-do, and that the land conveyed was unproductive; that the principal had frequently expressed the intention of conveying the land to her brothers and sisters and had so stated to her attorney in fact. The conveyance was made to the very persons concerning whom the principal had expressed such intention. In these circumstances the court held that "the act of the attorney was within the direct letter as well as within the spirit of the power conferred upon him." The case sheds no light whatever upon the question here presented.

Holding, as we do, that the expressed consideration on the face of the whole proceeding was merely nominal and of

no benefit to the principal, the burden was upon appellant, under the circumstances of this case, to prove 9 a substantial consideration, for such alone would be a substantial compliance with the letter of attorney.

But it is contended that such a rule, if adopted by this court, would jeopardize innumerable titles acquired under similar circumstances. It is asserted to be a matter of common knowledge that many such cases exist in the state, and that untold hardship and confusion might result from the establishment of such a rule. We know of no rule or principle by which we may assume, as a matter of common knowledge, that such a condition exists. From our knowledge of human affairs and humanity in general we are disposed to believe that few, if any, cases of this kind exist where a power of attorney was made to be exercised only for the benefit of the principal, and the principal permitted the property to be given away without consideration. In any event, the court does not feel authorized to sanction such conduct as against the protest of the principal in a case where the question of title is involved.

The deed in this case to Fanny Allen was executed in November, 1897. Almost immediately thereafter Jacob Huntsman brought an action to quiet title against her and another party holding a deed from the same attorney in fact, which deed was subject to the same infirmity. In April following, Fanny Allen conveyed the property back to the attorney in fact; and thus, in effect, eliminated herself from the action brought against her. The action as to the other party was prosecuted to a final judgment in favor of the plaintiff. This feature of the case is merely mentioned to illustrate the point heretofore made, that persons executing powers of attorney to sell property for their own benefit are not likely to permit the property to be given away for the benefit of another without entering reasonable protest. Hence we have little or no fear of the alleged hardship or confusion referred to by appellant concerning existing titles.

We have thus far endeavored to make our meaning clear as to the rule that should govern in this class of cases. We

have yet to consider, however, one phase of the case which differentiates it from the ordinary case in which the above rules might be invoked. If there were no peculiar features in the procedure of the present case tending to raise a doubt in our minds as to whether or not appellant had a full and fair opportunity to present her side of the case, we would have no hesitancy whatever in applying the rules above stated, reaffirming the former judgment, and denying the application for a rehearing.

But it is contended by appellant that neither the pleadings on which the trial was had nor anything which occurred at the trial raised the question of no consideration as affecting the title to the property. A careful examination of the record justifies this conclusion. It was not necessary, however, to make the specific issue in the pleadings for that is sufficiently presented by simply denying defendant's title. Not only this, it was not necessary even for plaintiff to raise the specific question of no consideration at the trial; for, as before stated, it was a duty incumbent upon defendant, under the circumstances of this case heretofore detailed, to show a substantial consideration in support of her title.

The serious feature of the case, however, and one of which the appellant complains, is that respondent in the court below, in moving to strike the deed from the evidence, stated his ground therefor to be, not that there was no consideration for the deed and therefore that it was only a gift, which the attorney in fact was not authorized to make, but that the attorney in fact had exhausted his power by the execution of a prior deed to another party. That was the sole ground of the motion, as we read the record, and it was the sole ground upon which the court granted the motion.

The trial court was not warranted in granting the motion upon this ground, especially inasmuch as the prior deed relied on was also made without authority, and hence the power of the attorney in fact to execute another deed was not exhausted. Nevertheless the respondent having based his motion to strike the deed upon an untenable ground, and the

trial court having granted the motion solely upon that ground, no question of consideration being presented, defendant may have been thrown off her guard, and for that reason neglected to assume the burden of proving a substantial consideration for the deed, assuming she had the power to make such proof. The court having decided the question upon other grounds, the question of whether or not there was a substantial consideration was in effect eliminated from the case, and in all probability would have been rejected if offered in evidence.

While this court is not bound by the reasons given by the trial court for its conclusions, but may affirm or modify a judgment upon any legal ground appearing in the record, still it is not bound to do so, and ought not to in an equitable proceeding if it might result in injustice to the appellant. *Thompson* v. *Reynolds,* 53 Utah 437, 174 Pac. 164; *Realty Co.* v. *Investment Co.,* 43 Utah, 75, 134 Pac. 608.

For the reasons stated the court is of the opinion that the case should be remanded to the trial court for the sole purpose of permitting the defendant to present such evidence as she may have tending to show that the deed to Fanny Allen was executed for a substantial consideration as contemplated in the power of attorney by authority of which the conveyance was made. Plaintiff, of course, should be permitted, if he choose, to present evidence on the same subject in support of his contention.

In order that there may be no misunderstanding as to the scope and meaning of this opinion, we hold the following to be the law of the case:

(1) That the power of attorney from Jacob Huntsman to Peter Huntsman did not authorize a gift of the property to Fanny Allen or a sale thereof for a mere nominal consideration; (2) that the deed made to Fanny Allen, as the record now stands, was made for a nominal consideration only, and was therefore not authorized by the power of attorney; (3) that the expressed consideration being only nominal, the burden of proof was on the defendant to prove that the deed was in fact made for a substantial consideration,

as contemplated in the power of attorney; (4) that defendant failed to discharge the burden thus imposed, and therefore failed to establish her title to the property. If the defendant can prove by a preponderance of the evidence that a consideration was paid for the property within the letter and spirit of the authority given the attorney in fact, the defendant is entitled to have her title quieted. Otherwise the judgment of the trial court is affirmed.

It is therefore ordered that the cause be remanded to the trial court for the purposes hereinbefore mentioned, and said court is hereby directed to make and enter its findings of fact and conclusions of law upon the evidence so presented, and enter its decree thereon in accordance with the views herein expressed; neither party to recover costs on this appeal.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.